UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARTNER, INC., Plaintiff, v. LISA MITNICK, Defendant. | CIVIL ACTION NO. JUNE 8, 2005 |

## COMPLAINT

## INTRODUCTION

1. This is an action brought by Gartner, Inc. ("Gartner" or the "Company") for damages and equitable relief caused by of the unlawful conduct of its former highly compensated vice president and corporate insider Lisa Mitnick ("Mitnick"). Specifically, this Complaint alleges that Mitnick breached her agreements with Gartner by violating her covenant not to compete with Gartner and by using and disclosing Gartner's trade secrets and proprietary, confidential information. Gartner further alleges that, as a result of Mitnick's wrongful conduct, she violated the Connecticut Unfair Trade Practices Act.

## COUNT ONE: BREACH OF NON-COMPETITION AGREEMENT

The Parties

2. Gartner is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.

3. The defendant, Mitnick, is an individual residing at 8108 Tomlinson Avenue, Bethesda, Maryland.

Jurisdiction and Venue

4. Jurisdiction exists in this Court based on complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. §1332.

5. Pursuant to 28 U.S.C. §1391, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of this action is situated in Connecticut, and because the parties have consented to the jurisdiction of the federal courts located in the state of Connecticut.

Gartner's Business

6. Gartner is the leading global provider of research and analysis on the information technology ("IT") industry. Gartner's principal business segments include research, consulting, executive programs and events. Gartner markets its research and analysis to IT companies, government agencies and the investment community.

Gartner's Agreement Regarding Certain Conditions of Employment

7. In consideration of their employment with Gartner every employee is required to execute an Agreement Regarding Certain Conditions of Employment (the "Agreement"). A copy of the Agreement that Mitnick executed is attached hereto as Exhibit A.

8. The Agreement contains a non-competition covenant in Section 5. Pursuant to the non-competition covenant, a Gartner employee is prohibited for a period of one year

following termination of employment, from competing with Gartner as a consultant, analyst, salesperson, independent contractor, independent business venture partner, member, employee or otherwise by developing, marketing or selling, or assisting others to develop, market or sell a product or service which is competitive with the products or services of Gartner including products or services which are planned for the future.

9. Section 7 of the Agreement provides that Gartner is entitled to immediately obtain and enforce an injunction prohibiting any employee from violating any terms of the Agreement. The Agreement further provides that the terms of the Agreement and rights of the party shall be governed by and construed in accordance with the laws of the State of Connecticut, and that each of the parties consents in advance to the jurisdiction of the appropriate state or federal court located within the state of Connecticut.

10. In connection with her employment by Gartner, Mitnick validly executed a copy of the Agreement on or about June 25, 2004. (See Exhibit A).

Gartner's Proprietary and Confidential Information

11. Gartner has developed and uses a wide variety of proprietary, confidential and trade secret information including, but not limited to, computer software programs, computer access information, new business ideas, product plans, marketing plans, sales and other forecasts, client lists and copyrighted material and trademarks ("Confidential Information").

12. Gartner's Confidential Information is crucial to Gartner as it enables the Company to compete in the marketplace effectively.

13. The Confidential Information is made up of Gartner's trade secrets in that:

a. The Confidential Information is not known by others outside of Gartner;

b. Gartner limits its own employees' access to the Confidential Information;

c. Gartner has taken reasonable steps to guard the secrecy of the Confidential Information;

d. The Confidential Information is extremely valuable to Gartner in providing it with a competitive advantage over its competitors, and it would be extremely valuable to its competitors;

e. Gartner has invested a vast amount of time and money on marketing, advertising, telemarketing, attending trade shows and conducting seminars to develop and compile the Confidential Information; and

f. It would be virtually impossible for the Confidential Information to be properly acquired or duplicated by others.

14. Gartner employees have access to the Company's Confidential Information in order to perform their job responsibilities.

15. Gartner employees are given a specific log-on name and password to provide entry into the computer system. By password protecting the computer system, Gartner guards against unauthorized access to its vital, valuable and confidential information.

16. When a Gartner employee receives a log-on name and password to the computer, he/she knows that access to the information stored in the computer system is confidential and is not to be disclosed to unauthorized persons.

17. Gartner employees are expressly instructed that they are not permitted to disclose any of the Company's Confidential Information to anyone outside the Company or use Confidential Information other than for Company business. Gartner employees are also

instructed not to remove any Confidential Information from the work premises unless authorized to do so.

18. In addition, Gartner employees are instructed that they are not to take any materials containing Confidential Information with them upon termination from the Company. Gartner's policies regarding its confidential, propriety and trade secret information are also set forth in the Company's Code of Conduct Policy, which is available to Gartner employees on the Company's intranet.

19. The Agreement also contains covenants and representations regarding Gartner's Confidential Information. In the Agreement, each Gartner employee acknowledges that the Company's confidential information includes items such as financial information, product and service costs, prices, business strategies, product and service plans, marketing plans and studies, forecasts, computer programs, databases (and documentation and information contained in the databases), computer access codes, know-how, technologies, records, business relationships, client lists (including identities of clients and prospective clients, identities of individual contacts of business entities which are clients or prospective clients, client spending preferences, businesses or habits), subscription or consultant termination dates, and other confidential or propriety information that has not been made available to the general public.

20. Pursuant to the Agreement, Gartner employees further acknowledge that all information related to the operation of Gartner's business is confidential and consists of trade secrets of Gartner and that all such assets shall remain the property and trade secrets of Gartner and that the disclosure of any of these assets would cause irreparable harm to Gartner.

21. Pursuant to Section 1 of the Agreement, Gartner employees agree not to use or disclose any of Gartner's Confidential Information other than solely in the furtherance of the Company's business and to take all lawful measures to prevent the unauthorized use or disclosure of the Confidential Information to any third party and to take all lawful measures to prevent unauthorized persons or entities from obtaining or using the Confidential Information and not to take any actions which would constitute or facilitate the unauthorized use or disclosure of Confidential Information.

22. The Agreement further provides that a Gartner employee will not remove from the Company's offices any books, records, documents or any information which can be stored in or retrieved from a computer and that the employee will deliver to the company all confidential materials in the employee's possession or control upon termination of employment.

Mitnick's Employment with Gartner

23. Mitnick was initially employed by Gartner as a special management consultant pursuant to a written agreement dated February 23, 2004 (the "Consulting Agreement"). Gartner engaged Mitnick to provide high-level strategic business planning to Gartner's senior management. Mitnick's services under the Consulting Agreement were expected to be completed the week of April 30, 2004.

24. Pursuant to the Consulting Agreement, Mitnick was to perform a strategic assessment known as an IT Information Market Assessment ("ITIMA"). The purpose of the ITIMA was to identify and analyze market opportunities for Gartner's IT information services and products including areas of potential growth, as well as market areas Gartner should focus

on less. Pursuant to the terms of the Consulting Agreement, and in order to complete the ITIMA, Mitnick worked closely with Gartner staff and had full access to internal Gartner proprietary business information and proprietary research. The final strategic assessment deliverable of the Consulting Agreement was for Mitnick to present, in person, her findings regarding the ITIMA to Gartner senior management.

25. On or about April 15, 2004, Mitnick accepted a written offer of employment from Gartner (the "Employment Offer"). Pursuant to the Employment Offer, Mitnick became a highly compensated vice president in Gartner's marketing organization. In conjunction with accepting the Employment Offer, Mitnick executed an Addendum To Offer Of Employment And Agreement Regarding Certain Conditions of Employment, thereby entering into the Agreement Regarding Certain Conditions of Employment (the "Agreement") detailed above.

26. Pursuant to section 5 of the Agreement, Mitnick agreed that for a period of one year following the termination of her employment for any reason, she would not develop, market or sell -- or assist others to develop, market or sell – a product or service which is competitive with Gartner's products or services, including but not limited to existing products or services and/or those products or services which are planned for the future.

27. In her position as a vice president in Gartner's marketing organization, Mitnick continued to provide advice concerning high-level strategic planning directly to Gartner's senior management concerning not only Gartner's existing business plans, but also Gartner's future business development plans.

28 In or about February 23, 2005, Mitnick's employment with Gartner terminated. At that time, Mitnick executed a Separation Agreement and Release of Claims, dated February 23, 2005 (the "Separation Agreement").

29. Pursuant to the terms of the Separation Agreement, Mitnick acknowledged and reaffirmed her commitment to adhere to her obligations concerning Gartner's Confidential Information, non-competition and non-solicitation as set forth in the Agreement.

Mitnick Breaches Her Non-Competition Agreement

30. Upon information and belief, Mitnick has accepted an offer of employment with Corporate Executive Board Company ("CEB"). CEB is Gartner's direct competitor in, among other things, the IT information market. In fact, Mitnick herself specifically identified CEB as a direct competitor of Gartner in her presentation to senior Gartner management of her strategic assessment.

31. On information and belief, Mitnick's duties at CEB will include the development, marketing or selling of products and/or services which are competitive with Gartner's products and services.

32. By accepting CEB's offer of employment, Mitnick has breached the non-compete provisions of the Agreement.

33. Mitnick's actions have caused and will continue to cause imparable harm and other damages to Gartner to an extent currently undetermined.

**COUNT TWO: BREACH OF CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT**

34. Gartner repeats and realleges each and every allegation contained in Paragraphs 1 through 33 of Count One, above, as if fully set forth in this Count Two.

35. When Mitnick worked for Gartner on, among other things, the ITIMA, she was exposed to Gartner's highly confidential and proprietary business plans and other Confidential Information.

36. On information and belief, Mitnick has disclosed or will inevitably disclose Gartner's Confidential Information to CEB, including, but not limited to the strategic assessment and ITIMA, and Gartner's future business development plans.

37. In so doing, Mitnick's actions were willful and deliberate and have caused and will continue to cause irreparable injury to Gartner for which there is no adequate remedy at law.

38. Mitnick's willful and deliberate actions have breached the express terms of the Agreement including, but not limited to, the confidentiality and non-disclosure covenants contained in Section 1 of the Agreement.

39. Mitnick's actions have caused and will continue to cause irreparable harm and other damages to Gartner to an extent currently undetermined.

**COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS**

40. Gartner repeats and realleges each and every allegation contained in Paragraphs 1 through 39 of Count Two, above, as if fully set forth in this Count Three.

41. The use and dissemination, and threatened use and dissemination, by Mitnick of Gartner's Confidential Information, strategic assessment, ITIMA and information related thereto constitutes misappropriation of Gartner's Confidential Information.

42. Mitnick's actions in misappropriating Gartner's confidential, proprietary and trade secret information were willful and malicious and have caused and will continue to cause irreparable injury to Gartner for which there is no adequate remedy at law.

43. Moreover, Gartner has suffered damage as a result of Mitnick's misappropriation, for which Gartner is entitled to an award of damages pursuant to Conn. Gen. Stat. §35-53(a).

44. Mitnick's misappropriation was willful and malicious, entitling Gartner to punitive damages and reasonable attorney's fees pursuant to Conn. Gen. Stat. §35-53(b).

**COUNT FOUR: VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**

45. Gartner repeats and realleges each and every allegation contained in Paragraphs 1 through 44 of Count Three, above, as if fully set forth in this Count Four.

46. Gartner is a person within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. ("CUTPA").

47. At all relevant times, Mitnick was a person acting in the conduct of trade or commerce within the meaning of Conn. Gen. Stat. §§ 42-110a et seq.

48. The foregoing actions of Mitnick constitutes unfair and deceptive acts and practices in the conduct of trade or commerce that are unethical, unscrupulous and offensive to public policy, and are a violation of Conn. Gen. Stat. § 42-110b(a).

49. As a result of the foregoing unfair and deceptive acts and practices, Gartner has suffered an ascertainable loss within the meaning of Conn. Gen. Stat. §§ 42-110g(a) and has suffered damages in an amount to be determined at trial.

50. The foregoing actions of Mitnick show calculated, deceitful and unfair conduct, and reckless indifference to the rights of Gartner. Accordingly, Mitnick is liable to Gartner for punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

51. Gartner is mailing a copy of this Complaint to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut, as required by Conn. Gen. Stat. § 42-110g(c).

**WHEREFORE,** the Plaintiff seeks:

1. A preliminary and permanent injunction enjoining and restraining the defendant, Lisa Mitnick:

a. From using directly or indirectly any of Gartner's confidential, proprietary or trade secret information including, but not limited to, information relating to the ITIMA;

b. From disclosing in any manner to anyone any of Gartner's confidential, proprietary or trade secret information;

c. From breaching the terms of the non-competition covenants contained in the Agreement;

d. From breaching any of the terms of the confidentiality covenants contained in the Agreement; and

e. Ordering that the defendant, Lisa Mitnick, deliver to this Court within seven (7) days of the entry of the preliminary injunction a certification to the Court that she has searched for and turned over, pursuant to the terms of the injunction order, all originals and all copies or derivations made therefrom of documents, forms, computer disks and print-outs containing information regarding Gartner's confidential, proprietary or trade secret information;

2. Compensatory damages in such amount as are proven at trial;

3. Punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a);

4. All damages, including punitive damages, pursuant to Conn. Gen. Stat. § 35-53;

5. Attorney's fees and costs pursuant to Conn. Gen. Stat. §§ 35-53(b), 42-110g(d);

6. Costs;

7. Interest; and

8. Any other such relief at law or in equity that the court deems just and appropriate.

**Jury Demand**

Trial by jury is hereby demanded as to all counts and allegations so demandable.

**PLAINTIFF,**
**GARTNER, INC.**

By: Daniel P. Fox

Glenn M. Cunningham (Fed. Bar No. ct09995)
Lee Anne Duval (Fed. Bar No. ct23387 )
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel: (860) 251-5000
Fax: (860) 251-5218
Email: gcunningham@goodwin.com
Email: lduval@goodwin.com

- and -

Daniel P. Fox. (Fed. Bar No. ct23391)
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: dfox@goodwin.com

Its Attorneys

121909 v.03